Robert B. TRABUE, Individually and as Power of Attorney for the Following: Judelle Trabue Scherer; Eleanor M. Trabue; Virginia T. Trabue; Charlotte Trabue Palmer; Alice B. Trabue; Rae Allen Case; Marietta Trabue; Willett C. Trabue III; Emily Charlotte Conway, Appellants,

v.

Martin TICHENOR and Helen Louise Tichenor, His Wife; the Citizens Fidelity Bank & Trust Co., Executor of the Estate of Alice E. Trabue, Deceased; Martin Tichenor and Helen Louise Tichenor, His Wife, as Representative of the Class Defendants, etc., Appellees.

Court of Appeals of Kentucky.

July 5, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Sept. 19, 1985.

B.M. Westberry, Westberry & Roberts, Marion, for appellants.

Flem Gordon, Gordon, Gordon & Craig, Owensboro, James W. Stites, Jr., Louisville, for appellees.

Before COOPER, HOWARD and WILHOIT, JJ.

HOWARD, Judge.

This is an appeal from the judgment of the Butler Circuit Court denying the appellants' action to quiet title to certain mineral rights in property located in Ohio County. The venue was transferred to the Butler Circuit Court from the Ohio Circuit Court.

The parties entered a stipulation of facts as to their competing claims to these mineral rights. The appellants and the appellee, Citizens Fidelity Bank and Trust Company, the Executor of the Estate of Alice E. Trabue, deceased, are the successors in title to Isaac H. Trabue, his grantees, assigns, successors, heirs-at-law and devisees. The appellees, Martin Tichenor, his wife Helen Louise Tichenor, are representatives of the defendant class of property owners of approximately 10,000 acres in Ohio County.

On or about July 2, 4 and 5, 1855, seventeen different grantors executed and delivered written instruments to Isaac H. Trabue conveying the mineral rights to property located in Ohio County. These deeds were basically identical in language aside from the grantor's name, property descriptions and some minor differences in punctuation and grammar, with the exception of about two deeds. The majority of the deeds conveyed to Isaac H. Trabue "all the coal minerals and mining privileges, and the right to remove same...." The remaining deeds conveyed to him the "coal and mining privileges." These instruments were recorded in Ohio County Court Clerk's Office on April 8, 1865.

The appellees, Martin Tichenor and Helen Louise Tichenor, and the other members of the defendant class, are owners of approximately 10,000 acres in Ohio County which is wholly or partially within the descriptions of property contained in the instruments given to Isaac H. Trabue. The titles of appellees and the class are traceable to William C. Rowan, the same source of appellants' title. The appellees were apparently unaware of the claim of Trabue heirs until a local attorney for an oil and gas lessee discovered the instruments in an old mortgage book a few months before the filing of the lawsuit.

The trial court noted that under the law governing recordings in 1855, instruments were not good against bona fide purchasers, such as the appellees, unless recorded within eight months from the date of the instruments. *See* Section 15 of Chapter 24, *Acts of 1852.* Thus, the Court ruled that the instruments in question were not good against the appellees because the deeds were not recorded until nine years and nine months after their date of execution. We disagree with the trial court's ruling both on the effect of the Trabue deed and on the certification of this suit as a class action.

■ The prerequisites to the certification by the trial court of an action as a class action are listed in CR 23.01. A party may sue or be sued only if (1) the class is so numerous that joinder of the parties is impractical; (2) there are common questions of law and fact; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

If the prerequisites of CR 23.01 are met, the trial judge may certify the action as a class action if the requirements of CR 23.02(a), (b) or (c) are satisfied. In the instant case, the trial court granted certification on the basis of CR 23.02(c) which provides that the court must find that common questions of law or fact predominate over any questions affecting an individual member and that a class action is the best method available for a fair and efficient adjudication. We do not agree that common questions of fact or law so predominated.

■ As we will establish below, a crucial question is the exact date a deed from William C. Rowan was executed to the predecessor in title to each member of the defendant class. If the date is prior to the recording of Isaac H. Trabue's deed in 1865, the law prescribes one result. If the defendants' deeds were executed after Trabue's deed was recorded, the result would be quite different. No evidence is presented in the record to show the date of execution of any deed belonging to a member of the defendant class, except that of the named appellees, Martin Tichenor and Helen Louise Tichenor. Thus, common questions of law and fact did not predominate and the trial court erred by allowing this suit to proceed as a class action. The appellants in the complaint requested that title be quieted in them as to the 711½ acres of the Tichenors. Sufficient evidence was presented on the Tichenors' chain of title so we may decide that claim.

■ Section 15 of Chapter 24 of the *Acts of 1852* required that in order for a deed to be good against a purchaser for considerations and without notice, that deed must be recorded within eight months. Generally, a deed not recorded within the time set by law cannot be received in evidence as a recorded deed. *Winlock v. Hardy*, 4 Litt 272 (1823). However, § 23 of that same Act provides: "Where deeds have been or may be legally executed, but not recorded or lodged for record in proper time, such deeds may be proved or acknowledged and recorded, and be as effectual from the time of so recording as if recorded in the proper time."

The Trabue deeds were not recorded until 1865, far in excess of the eight-month period. The question remains whether the deeds were "proved or acknowledged" prior to their recordation in 1865.

Appellants assert that KRS 382.230(3) is dispositive of the question of the proper recordation of the Trabue deeds. KRS 382.230(3) provides that:

No conveyance of real property certified, proven or lodged for record prior to June 17, 1924, shall be void or invalid because it was not certified, proven or lodged for record as required by the law in force at the time, if it was certified or proven in the manner prescribed by the Act of 1910, ch. 82, or by KRS 382.130, 382.140 or 382.150 (514).

However, the stipulation of facts agreed to by the parties only states the date the deeds were recorded, but no reference was made to any acknowledgments performed at that time. The remainder of the record is also silent concerning any acknowledgments of the deeds prior to recording.

The appellees contend that the burden of establishing the recordability of a deed or other such document is on the party offering the instrument. In the instant case, the burden would be on the appellants to prove the proper acknowledgments in 1865. However, none of the authorities cited by the appellees support this contention.

In *Owings & Davis v. Iles*, 19 Ky. (3 Monroe) 286 (1826), a deed was executed by the trustees of Owingsville for certain lots. The Court held that for the deed to be introduced as evidence, the party presenting it had the burden of showing that a majority of trustees signed the deed. Thus, the party presenting the deed had the burden of showing the deeds were properly executed.

In *Meadors v. Brown*, Ky., 16 Ky. 620, 29 S.W. 325 (1895), Brown asserted that a tract of land was conveyed to him by John Frederick, but that the deed was lost before it was recorded. The heirs of John Frederick disputed that any conveyance was made. Meadors intervened and denied that Frederick was the owner. He claimed to be the owner and was added as a party defendant. Meadors contended that Brown had the burden of establishing his title. The Court, however, ruled that the burden instead was on Meadors as a voluntary intervenor. This case provides no support for appellees' position.

In *Taylor v. Taylor*, Ky., 270 Ky. 203, 109 S.W.2d 570 (1937), the Court held that when the defendant/grantee failed to record a deed for a number of years after

the deed was executed, and the defendant was closely related to the grantors [the grantors were the defendant's parents], the defendant had the burden of establishing the validity of that transaction.

These cases cited by the appellees involve questions of proper execution at the time the deeds were made. Except for *Meadors*, the parties offering these deeds in these cases were required to establish that their execution was correct and proper. However, none of these cases stand for the proposition that, once due execution of a deed is established, the party offering that deed has the burden of showing the details of recording were followed.

The appellees also discuss *Winlock, supra*, in which the Court upheld a refusal to admit a deed into evidence that was recorded two years after it was acknowledged. The Court noted that an acknowledgment was solely for the purpose of admitting a deed to record. The acknowledgment was the only evidence showing proper execution of the deed in question, and thus insufficient proof to allow the introduction of the deed. Similarly, in *William's Heirs v. Wilson*, 34 Ky. 507, 4 Dana 507 (1836), the Court held that authentication by the Clerk of a deed recorded after the time period required by statute is not evidence of proper execution without some other proof of that execution.

■ In the instant case, the proper execution of the deeds to Trabue is not in issue as the parties stipulated that these deeds were properly executed. The question is whether the deeds were acknowledged or proved to the Clerk in 1865 prior to recordation. As stated above, the record is silent on that question. In the absence of a showing to the contrary, it is presumed that a clerk or other public officer performs their duties as required by law. *Monroe's Guardian v. Monroe*, Ky., 285 S.W. 250 (1926), *Slater v. Hatfield*, Ky., 242 S.W. 618 (1922). Therefore, the Trabue deeds must be presumed to have been acknowledged prior to their recordation in April of 1865.

■ Because the Trabue deeds were properly recorded in accordance with § 23 of chapter 24 of the Acts of 1852, these deeds were proper notice to anyone who obtained property from William C. Rowan after April 8, 1865, and therefore, these parties cannot be bona fide purchasers. Thus, one can see why it is necessary to establish the date of execution for each deed granted to each defendant landowner.

In regard to the property belonging to the Tichenors, that property was part of William C. Rowan's estate when he died in 1879. Rowan authorized his executors to convey any of his real estate not specifically devised in his will. On August 27, 1914, the land was conveyed by a surviving co-executor, J.W. Fork, to Abbie R. Ford via a general warranty deed. In 1949, Abbie R. Ford died and the property descended to her daughter, Mrs. Jessie R. Simmerman, who in turn left the property to her daughter, Winifred, when she passed away in 1951. Winifred Simmerman subsequently sold the property to the Tichenors in 1952.

Thus, the Tichenors' predecessor in title did not obtain title until about 50 years after the Trabue deed was recorded. Thus, according to § 23 of chapter 24, *Acts of 1852*, Trabue's deed for the mineral was constructive notice to subsequent purchasers. Therefore, neither Abbie R. Ford nor the Tichenors were bona fide purchasers as to these mineral rights.

■ The remaining issue is whether the oil and gas rights were conveyed to Trabue when the mineral was served. The trial court held that it did not, but we disagree because the case of *Franklin Fluorspar Co. v. Hosick*, Ky., 39 S.W.2d 665 (1931), holds otherwise. In that case the mineral estate conveyed read as follows: "... all the coal minerals and mining privileges." The Court of Appeals held that all the minerals were conveyed, including the oil and gas, and the conveyance was not limited to coal. We can discern no difference in the words used to describe the mineral estate conveyed between the case at bar and the above cited case.

The appellants have title to the mineral rights of the 711½ acres belonging to the Tichenors. Because we have ruled that the class was improperly certified, this decision does not effect the property rights of the other landowners.

The judgment is reversed.

All concur.