NEBRASKA ALLIANCE REALTY
COMPANY, Appellant

v.

Michael A. BREWER; Nadine Brewer;
James Rowe, Laurence Zielke III,
RZR Realty, LLC, on Behalf of Them-
selves and All Others Similarly Situat-
ed; Louisville/Jefferson County Metro
Government; and Value Finance Cor-
poration, Appellees

NO. 2017-CA-000062-ME

Court of Appeals of Kentucky.

SEPTEMBER 15, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Chadwick A. McTighe, Joseph L. Hamilton, Marjorie A. Farris, Louisville, Kentucky.

BRIEF FOR APPELLEE: John H. Dwyer, Jr., Louisville, Kentucky.

BEFORE: CLAYTON, COMBS, AND D. LAMBERT, JUDGES.

## OPINION

CLAYTON, JUDGE:

This case involves an appeal from a class action certification. Following the Jefferson Circuit Court's orders granting Appellees' motion for class certification, Nebraska Alliance Realty Company ("NARC") filed a CR[1] 23.06 interlocutory appeal. NARC principally claims the trial court erred by failing to make all the required findings pursuant to CR 23. We agree that the requisite findings were not made, thus we vacate and remand for further proceedings. We begin with a brief history of the case.

## BACKGROUND

This case involves allegations that NARC, which purchases delinquent tax bills, committed two tortious acts: first, it overcharged prelitigation attorney's fees during collection efforts; and second, it charged interest not permitted by statute. Appellees claim NARC charged these fees and interest to hundreds of people in Kentucky, and it sought to certify a class on these two claims because it alleged the facts underlying the claims were common and typical of all class members. A brief

---

1. Kentucky Rules of Civil Procedure.

outline of delinquent property tax claims highlights the commonalities of the class members' claims.

In Kentucky, when a real property owner is delinquent in paying his or her *ad valorem* taxes, certificates of delinquency may be created and sold to third parties. KRS[2] 134.128. By selling the delinquent certificates to third parties, the government receives the funds it needs to operate. Those third parties satisfy the tax debt and, in exchange, are permitted to recoup the cost of the certificates of delinquency along with other fees and interest as prescribed by statute. *Farmers National Bank v. Commonwealth Department of Revenue*, 486 S.W.3d 872, 875 (Ky. App. 2015); KRS 134.452. Recoverable fees include "[p]relitigation attorneys' fees, which may include amounts incurred for collection efforts and costs related to notification, processing, research, communication, compliance, legal costs, documentation, and similar expenses . . .[,]" actual and reasonable attorneys' fees incurred during collection remedies, and administrative fees. *Id.*

In the instant case, Appellees claim that NARC charged excessive and unfounded prelitigation attorneys' fees. NARC began purchasing certificates of delinquency in 2003. Appellees allege that NARC, as part of its pre-litigation efforts, would go to a Kinko's in Omaha, Nebraska, and print and mail unsigned notice letters to the delinquent tax payers on bills NARC had purchased. Prior to 2008, Appellees claim, NARC only charged $1.00 or $2.00 for these prelitigation notices. After the General Assembly amended KRS 134.452 to cap prelitigation fees because some delinquent bill purchasers were exacting excessive amounts, NARC began charging $50 to $75 for each letter as prelitigation attorney's fees, as those amounts were less

than the statutory limitations. Appellees claim the owner and operator of NARC, who is an attorney, admitted the charges were neither related to work on particular certificates, nor tied to efforts in creating the letters, but, rather, were reasonable amounts for the sum total of the work the owner was performing on all tax bills. Appellees further claim that NARC kept no records of the prelitigation work, nor did it separate out for what state its prelitigation work was being performed, as NARC purchased delinquent tax bills in multiple states.

In summary, Appellees' first claim is that because NARC kept no records detailing its work and simply charged blanket fees for each letter, it cannot prove that its fees to anyone in the purported class are either reasonable or actual.

Appellees' second claim is straightforward. Appellees allege that NARC charged interest on prelitigation fees in violation of KRS 134.125 and 134.452. They proffer that NARC's owner admitted during a deposition that he charged interest on administrative and prelitigation fees.

After delays for discovery, and following multiple, lengthy hearings on Appellees' class-certification motion, the trial court entered two orders. The first order analyzed the rule-based requirements for certifying a class and directed the parties to brief and present evidence at a hearing regarding the class's ascertainability. The second order then granted the motion and certified the class as follows:

> All persons who, on or after January 30, 2008, made payments to NARC on a certificate of delinquency purchased by NARC, which included: (a) payment towards "prelitigation attorney's fees" but for which no attorney performed or was

2. Kentucky Revised Statutes.

paid for work attendant to that particular certificate of delinquency; and/or (b) payment towards interest charged on money due and owing for anything other than the purchase price of the certificate of delinquency.

NARC timely brought this interlocutory appeal pursuant to CR 23.06. We now address the myriad claims NARC raises.

## STANDARD OF REVIEW

■ A trial court's decision to certify a class is reviewed for an abuse of discretion. *Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). Under this standard, we review the record and the ruling while giving deference to the trial court's factual findings and rulings because the trial court is in the best position to evaluate the evidence before it. *Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky. 2004).

■ We are cautioned to "be careful to avoid the sort of unfettered review of the record and of the trial court's rulings that indicates a de novo review." *Id.* When given discretion, trial courts are permitted to make decisions of their choosing within the realm of possible choices, and appellate courts are "powerless to disturb such rulings" that fall within that realm even if the appellate court would make a different choice. *Id. See, e.g., Harris v. Commonwealth*, 313 S.W.3d 40, 50 (Ky. 2010) ("While a trial court would be within its discretion to avoid even the possibility of impropriety posed by married jurors by dismissing one or the other, the trial court did not abuse its discretion here [by permitting the married jurors to both serve

on the defendant's jury].") Under this standard, we turn to the issues before us.

## CLASS CERTIFICATION JURISPRUDENCE

CR 23 governs class certification in Kentucky. CR 23.01 and 23.02 are nearly identical to their federal counterparts. *See* Fed. R. Civ. Pro. 23(a) and (b). "It is well established that Kentucky courts rely upon Federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart." *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010) (citing *Newsome By and Through Newsome v. Lowe*, 699 S.W.2d 748 (Ky. App. 1985)). *See also Lamar v. Office of Sheriff of Daviess County*, 669 S.W.2d 27, 31 (Ky. App. 1984) (utilizing federal law to interpret CR 23); *Haynes Trucking, LLC v. Hensley*, 2016 WL 930271 (Ky. App. 2016) (unreported and cited pursuant to CR 76.28(4)) (holding that "federal case law is persuasive in interpreting CR 23"). Accordingly, our outline covers both state and federal interpretations of the class certification rules.

A party seeking class certification bears the burden of proving four prerequisites exist:

    (a)   the class is so numerous that joinder of all members is impracticable,

    (b)   there are questions of law or fact common to the class,

    (c)   the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

    (d)   the representative parties will fairly and adequately protect the interests of the class.

CR 23.01.

These prerequisites are often referred to as numerosity, commonality, typicality, and adequacy. Numerosity is the require-

ment that the class is so numerous as to make joinder of all members impractical:

> Consistent with his overall burden to show the prerequisites for a class action, the one who asserts the class must show some evidence or reasonable estimate of the number of class members. Whether a number is so large that it would be impracticable to join all the parties is dependent not upon any arbitrary limit, but rather upon the circumstances surrounding the case; and there must be a positive showing of such circumstances. The substantive nature of the claim, the type of class suit, and the relief requested also bear on how expansive a definition of the class will be allowed and, accordingly, on the necessary showing of numerosity in relation to impracticability of joinder.

*Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983) (internal quotation marks omitted) (citation omitted).[3]

█ Commonality is the requirement that questions of law or fact are common among the class members. The class members must " 'have suffered the same injury[,]' " and the claims must depend on a common contention capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

█ What is important to the commonality inquiry is not simply that common questions exist in the class, but "rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*

*Stores*, 564 U.S. at 350, 131 S.Ct. 2541 (emphasis in original) (internal quotation marks omitted) (citation omitted). Meeting this requirement is not a herculean task. "CR 23.01(b) requires that there must be questions of law or fact common to the class, but it does not require that all questions of law or fact be common." *Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001). The questions common to the class members must "predominate over the questions which affect individual members." *Id.* Likewise, the facts between members need not be completely identical "as long as there is a common nucleus of operative facts." *Id.* And even if "some individualized determinations may be necessary to completely resolve the claims of each putative class member . . . those are not the focus of the commonality inquiry." *In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 399 (3d Cir. 2015) (finding commonality existed when mortgagor used the same unlawful kickback scheme, uniform method of inaccurate title charges, and repeated mail and wire fraud in dealing with class members). What is important to the inquiry is whether "the defendant's conduct was common as to all of the class members." *Id.* (internal quotation marks omitted) (citation omitted).

█ Typicality is the requirement that the representative parties' claims or defenses are typical of the class. Its analysis "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). While commonality examines the group characteristics of the class as a whole, typicality examines the individual charac-

---

**3.** Neither party disputes numerosity in the    instant case.

teristics of the named parties in relation to the class. *Id.* (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). As with commonality, the claims need not be identical, and "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). In other words:

the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)).

▬▬ Finally, adequacy is the requirement that the representative parties fairly and adequately protect the class's interests. The adequacy prong has two separate criteria: "1) the representative must have common interests with unnamed members of the class[;] and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp*, 532 F.2d 511, 525 (6th Cir. 1976). Though the adequacy prong overlaps some with the commonality and typicality prongs, the adequacy prong "also raises concerns about the competency of class counsel and conflicts of interest." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). *See also In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35 (2d Cir. 2009) ("Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antago-

nistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.' ") (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

Additionally, two "self-evident" requirements that are not mentioned in CR 23.01 are that a definable class exists and that the representatives are members of that class. Kurt A. Philipps, Jr., David V. Kramer & David W. Burleigh, 6 KY. PRAC. R. CIV. PROC. ANN. RULE 23.01 (6th ed., July 2016 update).

If the four rule-based prerequisites exist, the party seeking class certification must next prove that one of the provisions of CR 23.02 demands class certification:

(a) The prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(b) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to

other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

CR 23.02. If all of the requisite findings are met, the trial court must enter an order that "define[s] the class and the class claims, issues, or defenses, and ... appoint[s] class counsel[.]" CR 23.03(2).

Using these guidelines, we address the issues raised by NARC.

## ANALYSIS

NARC's principal argument is that the trial court failed to make the requisite factual findings. For the reasons stated below, we agree that the orders fail to make the requisite factual findings and legal conclusions, and we vacate and remand for further proceedings.

The December 21, 2015, Opinion and Order contained some factual findings and discussed the numerosity, commonality, and typicality prerequisites of CR 23.01. The court then ordered the parties to schedule a hearing to address "ascertainability." Following that hearing, the trial court entered an order certifying and defining the class. In neither order did the trial court make factual findings regarding adequacy, nor did the trial court appoint class counsel, nor did the trial court define the class defenses.

■ By failing to make factual findings regarding adequacy, the trial court abused its discretion by certifying the class. As stated above, the adequacy prong has two separate criteria: "1) the representative must have common interests with unnamed members of the class[;] and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter v. General Motors Corp, 532 F.2d 511, 525 (6th Cir. 1976). Additionally, the adequacy prong "also raises concerns about the competency of class counsel and conflicts of interest." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 n.13 (1982).

In the instant case, NARC raised several adequacy issues, including whether the representatives have common interests with the class, whether class counsel was competent to represent the class, and whether class counsel had conflicts of interest. The trial court issued no factual findings or conclusions of law on any of these claims, which is an error warranting vacating and remanding for further proceedings.

■ NARC argues that instead of vacating and remanding we should review the record and determine that no class can be certified. We disagree. NARC has proffered numerous factual issues that need to be addressed by the trial court. For example, when arguing that class counsel cannot adequately represent the class due to his purported solicitation of class representatives, NARC proffers that the trial court "fail[ed] to allow discovery on this material issue prior to ruling on class certification," thus raising "serious questions as to adequacy based on solicitations the full extent of which is not yet known." Aplt's Brf. at 21. Without factual findings by the trial court on this and the other adequacy is-

sues, we cannot determine if the trial court abused its discretion by certifying a class.

■ Indeed, we would be usurping the trial court's discretionary power if we were to make factual findings and legal conclusions in the first instance on appeal. An abuse-of-discretion standard requires us to be highly deferential to the trial court's decision. "[I]n most cases, a discretionary decision will be a close one, at least from the appellate perspective, and will not be disturbed by an appellate court unless it is firmly convinced that a mistake has been made." *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 72 (Ky. 2010) (citing *Walters v. Moore*, 121 S.W.3d 210, 215 (Ky. App. 2003), quoting *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (internal quotation marks omitted)). Because the trial court must make factual findings and—*in its discretion*—decide whether to certify a class, the answers to NARC's issues are for the trial court to determine in the first instance and for us to review in the second instance only for an abuse of discretion. *Cf. Belden v. Cabinet for Families and Children*, 488 S.W.3d 45, 51-52 (Ky. App. 2016) (vacating and remanding order under abuse-of-discretion standard because order denying request for inspection of adoption records did not make required factual determination).

■ We must also vacate and remand the order because it fails to appoint class counsel or detail the class defenses. "An order that certifies a class action must define the class and the class claims, issues, or defenses; and must appoint class counsel under CR 23.07." CR 23.03(2). This failure to appoint class counsel highlights the orders' deficiencies in the adequacy prong. That prong necessarily requires an analysis of class counsel's ability to adequately protect the class's interests. "It tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations." *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 428 (3d Cir. 2016) (as amended May 2, 2016) (*cert. denied, Gilchrist v. National Football League*, —— U.S. ——, 137 S.Ct. 591, 196 L.Ed.2d 473 (2016), and *Armstrong v. National Football League*, —— U.S. ——, 137 S.Ct. 607, 196 L.Ed.2d 473 (2016)). By failing to appoint class counsel in the order establishing the class, the trial court necessarily failed to determine the adequacy prong *in toto*.

Thus, we vacate and remand for the trial court to make factual findings and legal conclusions as required by CR 23. Regarding the adequacy prong specifically, the trial court should address all adequacy issues raised by NARC, including those relating to whomever the trial court appoints as class counsel. On remand, the trial court must issue detailed factual findings and legal conclusions supporting its decision to certify or not certify a class. *See, e.g., Rose v. Council for Better Educ., Inc.*, 790 S.W.2d 186, 202 (Ky. 1989) (holding that a trial court should conduct hearings and make findings of fact before certifying a class). The order must "define the class and the class claims, issues, or defenses, and must appoint class counsel under CR 23.07." CR 23.03(2). Furthermore, because the typicality, commonality, and adequacy prongs overlap in analysis, *General Telephone*, 457 U.S. at 157 n.13, 102 S.Ct. 2364, the trial court should revisit all prongs on remand to determine whether to certify a class. *Cf.* CR 23.03(3) ("An order that grants or denies class certification may be altered or amended before final judgment.").

■ NARC also raises additional issues on appeal relating to typicality and commonality. We have reviewed them and

hold that appellate resolution of the same is dependent on the trial court's factual findings, which, as we have already held, are materially deficient to certify a class. As the typicality, commonality, and adequacy prongs are interrelated, the trial court's factual findings on remand may substantially alter any analysis of the claims. Accordingly, we decline to review NARC's typicality, commonality, and adequacy claims at this time. We remind the trial court that on remand it should conduct a "rigorous analysis" of the claims, with the burden of proof remaining squarely on the party seeking class certification:

> A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.
>
> We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S.Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S.Ct. 2364; see *id.*, at 160, 102 S.Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains … indispensable").
>
> Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. " '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Falcon, supra,* at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); some internal quotation marks omitted).

> Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation.

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-52, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (footnote and some citations omitted) (paragraph breaks added for readability). Furthermore, if the trial court finds the CR 23.01 prerequisites are met, it must then examine whether one of the three requirements of CR 23.02(a)-(c) is met.

In the orders below, the trial court summarily found CR 23.02(c) was met. That prerequisite requires "that the court must find that common questions of law or fact predominate over any questions affecting an individual member and that a class action is the best method available for a fair and efficient adjudication." *Trabue v. Tichenor,* 695 S.W.2d 432, 434 (Ky. App. 1985) (disc. rev. denied and ordered published by Kentucky Supreme Court). On remand, if the trial court utilizes CR 23.02(c) again, for guidance we direct the trial court to the predominance and superiority analysis in *Childers Oil Co. v. Reynolds,* 2012 WL 1900135 at *6 (Ky. App. 2012) (unreported and cited pursuant to CR 76.28(4)). We reiterate that detailed factual findings and legal conclusions should be included in the order.

Finally, NARC claims the trial court erred when it determined the certified class was ascertainable. Though nothing within CR 23 explicitly requires ascertainability, the trial court relied on *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012), to find the ascertainability prong was "implicit in the Rule 23 analysis[.]" Order, p.5. *See also Byrd v. Aaron's Inc.,* 784 F.3d 154, 161-62 (3d Cir. 2015)

("... the ascertainability requirement is implicit rather than explicit in Rule 23 ..."). We are unable to find any Kentucky authority that has required ascertainability, and, indeed, neither party has cited us to any Kentucky authority.

As we are vacating and remanding for additional factual findings, the trial court should make factual findings regarding ascertainability if it again determines this prong is implicit in the CR 23 analysis. To that end, we note two items for the trial court to consider on remand. First, the federal courts that read ascertainability into the rules are divided regarding whether the ascertainability analysis under Fed. R. Civ. Pro. 23(b)(3) should be "weak" or "heightened." *Mullins v. Direct Digital, LLC,* 795 F.3d 654 (7th Cir. 2015). Second, the future use of ascertainability in the federal system is questionable. Robert H. Klonoff, *Class Actions in the Year 2026: A Prognosis,* 65 Emory L.J. 1569, 1605 (2016).

## CONCLUSION

The trial court conducted multiple, thorough hearings before deciding to certify a class in the instant case. Its two orders that certify a class are deficient because they lack the requisite factual findings and legal conclusion. They also do not fully "define the class and the class claims, issues, or defenses," and "appoint class counsel under CR 23.07." CR 23.03(2). Because of these deficiencies, we hold that the trial court abused its discretion by certifying the class. Thus, we **VACATE AND REMAND** the January 5, 2016- and December 29, 2016-entered orders.

As demonstrated in the aforementioned class-action jurisprudence, on remand the trial court should enter detailed factual findings and legal conclusions resolving the motion to certify a class. Should the trial court elect to certify a class on remand, its order must address the four prerequisites of CR 23.01 (numerosity, commonality, typicality, and adequacy) and one of the three requirements of CR 23.02. It must also "define the class and the class claims, issues, or defenses, and must appoint class counsel under CR 23.07." CR 23.03(2). After defining the class, the trial court may consider ascertainability if the parties raise it. We caution the trial court that ascertainability is not an explicit requirement in CR 23, and it may not even be an implicit requirement for certifying a class under Kentucky law. Regardless, if the trial court undertakes an ascertainability analysis, it needs to support its legal conclusions with detailed factual findings.

ALL CONCUR.