RENDERED:  OCTOBER 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1157-MR

YOKOHAMA INDUSTRIES
AMERICAS INC.                                                    APPELLANT


APPEAL FROM WOODFORD CIRCUIT COURT
v.            HONORABLE JEREMY MATTOX, JUDGE
ACTION NO. 20-CI-00076


FLUID ROUTING SOLUTIONS, LLC                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Yokohama Industries Americas Inc. (Yokohama) alleged
that Fluid Routing Services, LLC (Fluid Routing) provided defective hoses used in
the engines of Ford pickup trucks.  Fluid Routing disagreed.  Yokohama sought
reimbursement from Fluid Routing, arguing the matter was governed by a 2010
Supplier Requirements Manual (the Manual), under which any disputes were to be
resolved by Kentucky courts.  Fluid Routing contends a 2009 Supply and

Technical Services Assistance Agreement (the Agreement), purportedly entered into by predecessors of Fluid Routing and Yokohama, instead governs the matter, under which any disputes are to be resolved via arbitration in Michigan. The trial court rejected Yokohama's argument that the Manual had superseded the Agreement and held that the Agreement gives the arbitrator the power to determine whether the parties' disputes are subject to arbitration.

We are not asked to determine whether Fluid Routing supplied defective hoses, which contract controls, or whether the trial court correctly held that the arbitrator must determine the arbitrability of the disputes. Instead, Yokohama raises only two narrow issues. First, it argues the trial court abused its discretion by declining to grant Yokohama's motion for leave to file a supplemental brief, which it tendered well after dispositive motions had been submitted for adjudication. In that supplemental brief, Yokohama changed course from arguing that the Manual superseded the Agreement and argued, for the first time, that it was not a successor to a party to the Agreement and thus could not be bound by it. According to Yokohama, a second, separate Yokohama entity was the successor in interest to a party to the Agreement. Second, and relatedly, Yokohama argues the trial court erred by finding that Yokohama is a successor to a party to the Agreement. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

This appeal has a tangled underlying history.  In the interests of judicial economy, we will relate only the essential information necessary to understand the discrete issues before us.

Yokohama purchased hoses from Fluid Routing.  The purchase order for those hoses, which bears Yokohama's letterhead but says the hoses should be delivered to the second Yokohama entity (a subject to which we shall return), states that "[t]erms and Conditions apply to all purchase orders.  They can be found in our Supplier Requirements Manual."  Record (R.), at 105.  In 2019, Ford told Yokohama that one of the hoses had failed, which led to a recall of over 100,000 trucks.  Yokohama is apparently contractually obligated to pay Ford for the costs of the recall, which were initially estimated to be over $4,000,000.  Yokohama, in turn, sought reimbursement from Fluid Routing under the Manual.  Fluid Routing denied the Manual controlled the matter and argued that the disputes were governed by the Agreement.

Unable to amicably resolve their dispute(s), Yokohama and Fluid Routing each filed separate actions against the other on the same day in March 2020.  Fluid Routing filed a demand for arbitration against Yokohama in Detroit, Michigan – the place and manner for resolving disputes under the Agreement.  Yokohama filed suit in the Woodford Circuit Court against Fluid Routing – the

-3-

place and manner for resolving disputes under the Manual.  Yokohama asked the

trial court to stay the Michigan arbitration and Fluid Routing asked the trial court

to dismiss Yokohama's complaint and compel arbitration in Michigan.

In addition to the question of whether the dispute would be resolved

by a Kentucky court or a Michigan arbitrator, the question of determining which

contract controls has major financial stakes.  The purchase order terms and

conditions section of the Manual states that a supplier, such as Fluid Routing,

would be responsible for paying "all" damages "incurred as a result of any defect

or breach of warranty in any item covered by this order." R. at 58.  By contrast, the

Agreement has a damages formula which would seem to limit significantly the

amount potentially owed by Fluid Routing.[1]

The trial court signed an agreed order scheduling briefing on the

dueling motions to stay arbitration and to compel arbitration.  The parties

submitted briefs presenting their arguments as to why each believed the Manual or

the Agreement to be controlling.  The trial court heard oral argument on the

motions via Zoom for nearly an hour in early June 2020.  During that lengthy

---

[1] Specifically, the Agreement provides that if Fluid Routing's predecessor supplied faulty parts, it was responsible for paying only "a percentage proportionate to the price of the . . . [p]art hereunder relative to the price of the assembly sold. . . .  For example, if . . . [a] Part, valued at $2.00, causes a failure of the . . . assembly in which it was incorporated, valued at $10, then [Fluid Routing's] Share of costs related to such failure will be 20%." R. at 150.  In its complaint, Yokohama asserts application of the formula would result in Fluid Routing paying "only 6% of the damages that [Yokohama] is contractually obligated to pay Ford." R. at 9.

hearing, Yokohama never argued that it was not a successor to a party which signed the Agreement. In fact, Yokohama's counsel explicitly stated the opposite.[2] The trial court took the motions under submission and stated it expected to rule in sixty to ninety days.

In late August 2020, after the motions to stay and compel arbitration had stood submitted for over sixty days, Yokohama filed a motion for leave to file a supplemental brief. In its tendered supplemental brief, Yokohama completely reversed course and argued, *for the first time*, that it was "not a successor, transferee, or assign[ee]" of any of the signatories to the Agreement, so it could not be bound by its terms. R. at 1175. According to Yokohama, the separate, second Yokohama entity was the successor to a party to the Agreement.

Frankly, the corporate lineage of Yokohama and the relationship between the two Yokohama entities is not easily perceived with complete and reliable precision from this distant vantage point based on the record before us. Distilled to its essence, however, as we construe it, Yokohama argues that there are two similarly named, and thus potentially confusing, Yokohama entities. To

---

[2] Specifically, counsel stated at Video Record 37:45 *et seq.*:

> Just because the parties, actually the predecessors to, um, the parties to this litigation decided to arbitrate, um, claims that arise out of the interpretation or, um, performance of the [Agreement], doesn't have anything to do with whether the parties later agreed in a new, thirty-six page, more comprehensive contract [*i.e.*, the Manual] not to arbitrate.

-5-

muddy the waters further, each Yokohama entity has undergone a name change since the Agreement and Manual were issued: Yokohama Industries Americas Inc. (the Appellant here and Plaintiff below) was formerly known as YH America, Inc. and Yokohama Industries Americas South Carolina, LLC (not a party to this case) was formerly known as YH America South Carolina, LLC. The Yokohama entity involved in this case argues that the South Carolina Yokohama entity acquired an entity which signed the Agreement. Therefore, as the argument goes, the Yokohama entity involved in this case is not directly linked to any party which signed the Agreement. Yokohama offered no explanation about why it had not previously raised this potentially dispositive argument earlier, nor did it cite any authority permitting it to raise a whole new theory of the case after dispositive motions had been filed.

And, adding to the confusion, the purchase order for the allegedly defective hoses bears the letterhead of Yokohama Industries Americas Inc. (the party before the Court) but immediately below that letterhead the name and mailing address for Yokohama Industries Americas-South Carolina LLC is listed. And that purchase order states that the hoses are to be shipped to the South Carolina Yokohama entity.

A few days after Yokohama filed its motion for leave to file a supplemental brief, Fluid Routing filed its response, correctly noting the motion

was belated, offered without explanation, and "flatly contradicts" Yokohama's previous litigation position. R. at 1235. As Fluid Routing points out, Yokohama previously had made multiple acknowledgements that it was a successor in interest to a signatory to the Agreement. For example, in a filing in the Michigan arbitration proceedings, Yokohama stated that "YIA [the Yokohama entity which is an Appellant here] was formerly YH America, South Carolina." R. at 1243. Of course, YH South Carolina is the entity Yokohama now argues is the lone Yokohama successor to a signer of the Agreement. And Yokohama's counsel referred to the signers of the Agreement as "predecessors" of the parties before the court during the oral arguments on the motions to stay and compel arbitration. Finally, in its memorandum in support of its motion to stay arbitration, Yokohama stated that Fluid Routing "contends that an earlier contract, the [Agreement] . . . **signed by the parties' predecessors** on May 4, 2009, governs [Yokohama's] claims against it." R. at 16 (emphasis added).

The trial court issued the order which gave rise to this appeal the same date Fluid Routing filed its response to Yokohama's motion for leave to file a supplemental brief. The court found that: a) the parties' predecessors agreed to the terms of the Agreement; b) the Manual did not terminate the Agreement because Yokohama lacked the authority to terminate the Agreement at the time the Manual was issued; and c) questions of the arbitrability of disputes arising under

-7-

the Agreement were to be decided by the arbitrator.[3]  Thus, the court denied

Yokohama's motion to stay the arbitration, granted Fluid Routing's motion to

compel arbitration, dismissed Yokohama's complaint, and denied as moot

Yokohama's motion to file a supplemental brief.  Yokohama then filed this appeal.

## ANALYSIS

Though the record is nearly 1,300 pages long, Yokohama's concise

brief raises only two discrete, closely related issues.  First, Yokohama argues the

trial court abused its discretion by declining to consider the tendered supplemental

brief.  Second, relying upon the allegations in that tendered supplemental brief,

Yokohama argues the trial court clearly erred by finding that Yokohama's

predecessor was a party to the Agreement.  We disagree with both arguments.

---

[3] Yokohama does not facially contest the trial court's conclusion that – accepting that the Manual did not supersede the Agreement – the arbitrator had the jurisdiction to determine the arbitrability of the parties' disputes, so we express no opinion on that matter.  Instead, we merely note that Section 23 of the Agreement provides that disputes arising under it will be resolved via arbitration in Detroit, Michigan and governed by the commercial rules of the American Arbitration Association.  Rule R-7(a) of those commercial rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See Commercial Arbitration Rules and Mediation Procedures*, AMERICAN ARBITRATION ASSOCIATION, https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited Sept. 16, 2021).  Indeed, our Supreme Court has recognized that "the vast majority of courts have held that an agreement to arbitrate in accordance with the AAA's Rules clearly indicates the parties' intention to let an arbitrator determine whether their dispute is arbitrable." *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 756 (Ky. 2019) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

-8-

1. *Declining to Consider Yokohama's Motion Was Not an Abuse of Discretion.*

Surprisingly, the parties have not cited, nor have we independently located, published authority directly and unambiguously addressing the standards guiding the decision of whether to grant leave to file a supplemental brief after a court-ordered briefing schedule had expired. However, we conclude the issue falls within the general rule that courts have wide discretion in managing their dockets.

For example, for nearly a century Kentucky has recognized that "courts are vested with the right to adopt and promulgate reasonable rules for the guidance of litigants and their counsel and which they are as much under duty to observe as if the rules had been created by statutory enactment. . . ." *Warfield Nat. Gas Co. v. Allen*, 236 Ky. 358, 33 S.W.2d 34, 35 (1930). And sixty years ago, Kentucky's then-highest court reiterated that "courts (even without express authority given by the constitution, statute, or rule of a supreme court of a state) have inherent power to prescribe rules to regulate their proceedings and to facilitate the administration of justice." *Craft v. Commonwealth*, 343 S.W.2d 150, 151 (Ky. 1961).

In short, the courts of this Commonwealth have discretion as to how best to manage their dockets, including setting and enforcing deadlines. Consequently, as both parties ask us to do in their briefs, we shall review the trial

court's decision to decline to accept Yokohama's supplemental brief under the "highly deferential" abuse of discretion standard. *Nebraska All. Realty Company v. Brewer*, 529 S.W.3d 307, 315 (Ky. App. 2017). Indeed, "[w]hen given discretion, trial courts are permitted to make decisions of their choosing within the realm of possible choices, and appellate courts are powerless to disturb such rulings that fall within that realm even if the appellate court would make a different choice." *Id.* at 311 (internal quotation marks and citations omitted). A court abuses its discretion if its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (internal quotation marks and citation omitted).

As we must anytime we are asked to conclude that a trial court abused its discretion, we must closely examine the facts. In early May 2020, the trial court signed an agreed order which required briefs for Yokohama's motion to stay arbitration and Fluid Routing's then-forthcoming motion to dismiss and compel arbitration to be submitted by late May 2020.

The matter then stood submitted for *over two months* before Yokohama submitted its motion for leave to file a supplemental brief in which it raised a completely new argument. And, as previously mentioned, Yokohama gave the trial court *utterly no reasons* why it did not know all along that it allegedly is not the successor in interest to a party to the Agreement. After all, it is

-10-

beyond reasonable dispute that Yokohama, like any sophisticated business entity, must know, or at least reasonably should know, its corporate lineage. Yokohama even admitted multiple times that it was a successor to a party to the Agreement.

Then everything changed, from Yokohama's perspective. Why? Yokohama has *never* offered *any* explanation for its tardy about-face. Moreover, Yokohama cited *no authority whatsoever* in support of its motion. We cannot hold under those facts that the trial court acted unreasonably or arbitrarily by not granting Yokohama's motion to file a supplemental brief.

Having given that general overview, we will address Yokohama's specific arguments. Yokohama asks us to conclude that the trial court should have accepted its belated brief under the liberal standard found in Kentucky Rules of Civil Procedure (CR) 15.01, which requires a court to "freely" grant leave to a party to amend a pleading whenever "justice so requires." Of course, Yokohama did not cite CR 15.01 in its motion, so the trial court had no reason to analyze that rule.

What constitutes a "pleading" is specifically listed in CR 7.01,[4] and that list does not encompass the filings at issue. As Kentucky's then-highest court

---

[4] CR 7.01 provides in its entirety:

> There shall be a complaint and an answer; a reply to counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if leave is given under Rule 14 to summon a person who was not an original party; and a third-party answer, if a third-party complaint is served.

-11-

held over sixty years ago (albeit in a factually distinguishable case), "[a] motion is not a pleading." *Underhill v. Thomas*, 299 S.W.2d 633, 634 (Ky. 1957).

Even if we accepted, hypothetically and solely for purposes of argument, that CR 15.01 applied to this motion to file a supplemental brief (which, we repeat, it does not), Yokohama could not show that the trial court abused its discretion. Under CR 15.01, "significant factors to be considered in determining whether to grant leave to amend are timeliness, excuse for delay, and prejudice to the opposite party." *Lawrence v. Marks*, 355 S.W.2d 162, 164 (Ky. 1961). Here, the motion was untimely, contained no excuses for the delay, and would have been unduly prejudicial to Fluid Routing. "Although liberality in allowing amendments to pleadings is to be definitely encouraged, this does not mean that leave should be granted without limit or restraint. The time must arrive when the plaintiff must be required to stand on the allegations he is asserting." *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 9 (Ky. 1972).

We also reject Yokohama's argument that, since the case was in its relative infancy, granting its motion would not have prejudiced Fluid Routing. We agree that the case had been pending for only about five months when Yokohama filed its motion. But determining whether an opposing party would be prejudiced

No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

by an untimely supplemental filing depends on more than just how long a case has been on a court's docket.

For those five months, Fluid Routing had been working to counteract Yokohama's contention that the Manual superseded the Agreement. Changing Yokohama's position vis-à-vis whether it was a successor to a party to the Agreement would have meant Fluid Routing had essentially wasted five months of time and resources.

And, since in physics and litigation alike, every action causes an equal and opposite reaction, if one party completely changes its entire litigation approach an opposing party is inevitably forced to change its own approach. Accordingly, Fluid Routing's attorneys would have had to undertake significant additional research (and perhaps discovery) to respond properly to Yokohama's new stance regarding the (in)applicability of the Agreement. For example, even a non-signatory to an arbitration agreement may nonetheless sometimes be bound by it. *See Olshan Foundation Repair and Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. App. 2009); 21 WILLISTON ON CONTRACTS § 57:19 (4th ed. 2021). Fluid Routing would have had to research first whether Yokohama was truly not a successor to a party to the Agreement. Then, if that research showed that Yokohama was not a successor to a party to the Agreement, Fluid Routing would have had to explore whether Yokohama met the criteria for nonetheless being

bound to the Agreement's arbitration clause. In real world terms, that additional research (and perhaps discovery) would inevitably have driven up Fluid Routing's litigation costs and would have delayed a final determination of whether the disputes would be subject to arbitration.

In short, Fluid Routing would have suffered palpably undue prejudice if Yokohama had been permitted, without explanation, to alter completely its litigation strategy after dispositive motions had been submitted. Although rendered in a different context, we deem apt here our Supreme Court's holding that "[i]t is a waste of judicial – and litigant – resources to allow a party to assert a defense late in the game that could have disposed of the case prior to the employment of valuable resources." *United Broth. of Carpenters v. Birchwood Conservancy*, 454 S.W.3d 837, 842 (Ky. 2014).

Of course, as part of its inherent ability to control its own docket, the trial court could nonetheless have accepted the tendered supplemental brief, as a federal trial court in Michigan did in the unpublished order cited by Yokohama, *Palmer v. Schuette*, 2016 WL 5477260, at *1, n.1 (E.D. Mich. Sept. 29, 2016).[5]

---

[5] Obviously, an unpublished order from a federal trial court in Michigan is not binding here. Moreover, Yokohama did not cite *Palmer* in the trial court. In addition, the federal court in *Palmer* simply held, without any explanation or analysis, that "[e]ven though there is no authority for unilaterally filing a supplemental brief on a dispositive motion . . . the interests of justice strongly favor the consideration of Plaintiff's Supplemental Brief." *Palmer*, 2016 WL 5477260, at *1, n.1. A reader thus is left wondering "Huh? What? Why?"

-14-

But, all of Yokohama's arguments to the contrary notwithstanding, there is no authority of which we have been made aware which would mandate that a trial court *had* to accept a supplemental brief under these facts. In sum, "[a]lthough a circuit court may, in its discretion, consider an argument which is brought outside the time it has prescribed for the filing of memoranda, it is not compelled to do so." *Green Tree Servicing, LLC v. Weaver*, No. 2011-CA-000379-MR, 2012 WL 4464459, at *2 (Ky. App. Sept. 28, 2012).[6]

2. *The Finding that Yokohama Is a Successor to a Party to the Agreement Is Not Clearly Erroneous.*

Yokohama's final main argument is that the trial court clearly erred by finding that Yokohama and Fluid Routing's "predecessors" entered into the Agreement. R. at 1244. We agree with the parties that we may disturb a trial court's finding of fact only if it is clearly erroneous. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 340 (Ky. App. 2001). And "[a] finding of fact is clearly erroneous when it is not supported by substantial evidence." *Stanford Health & Rehabilitation Center v. Brock*, 334 S.W.3d 883, 884 (Ky. App. 2010).

Yokohama's entire terse argument is premised upon its vehement insistence that it is not the successor of a signatory to the Agreement. But

---

[6] We cite *Green Tree Servicing* only as a particularly apt example under analogous facts of how we have zealously guarded a trial court's inherent discretion to manage its docket.

Yokohama cited no cases or other authority to support its position. And Yokohama earlier in the litigation said the exact opposite.

First, Yokohama argued in writing, and then again orally at a June 2020 hearing held by Zoom, that it had "terminated" the Agreement. R. at 528; Video Record at 11:40 *et seq*. Yokohama does not explain how it had the ability to terminate a contract to which it now says it has no relationship. After all, it is a "basic principle that the obligations of a contract are limited to the parties thereto and cannot be imposed on a stranger to the contract," *Kovacs v. Freeman*, 957 S.W.2d 251, 256 (Ky. 1997), so, logically, a stranger to a contract concomitantly lacks the authority to terminate it.

Second, we have already held that the trial court did not abuse its discretion by denying Yokohama's request to file a supplemental brief. And without consideration of that supplemental brief, there is *nothing* in the record to support Yokohama's conclusion that it is not bound by the Agreement. In fact, though we cite it only for illustrative purposes, we have similarly held that an argument "raised for the first time . . . in a sur-reply which was not authorized by the circuit court's scheduling order" had "never properly [been] brought before the circuit court," and instead had been "waived" and "cannot be asserted" on appeal. *Green Tree Servicing, LLC*, 2012 WL 4464459, at *3.

Third, by contrast, there is substantial evidence to support the trial court's conclusion that Yokohama was bound by the Agreement. Yokohama never denied in its complaint or otherwise that it was bound by the Agreement (prior to seeking leave to file a supplemental brief). As a matter of fact, Yokohama represented exactly the opposite at least three times, as set forth previously (in its memorandum in support of its motion to stay arbitration, in a filing in the arbitration proceedings, and orally during the oral arguments held by Zoom). The trial court's finding that Yokohama's predecessor was a party to the Agreement is therefore amply supported by substantial evidence, so we may not disturb it.[7]

We have considered all the arguments raised by the parties but deem any argument not explicitly addressed herein to be redundant, irrelevant, or otherwise without merit.

## **CONCLUSION**

For the foregoing reasons, the Woodford Circuit Court is affirmed.

ALL CONCUR.

---

[7] Even if the trial court had accepted the supplemental brief, those statements/admissions by Yokohama would likely have been substantial evidence to support a conclusion that Yokohama nonetheless was a successor to a party to the Agreement.

BRIEFS FOR APPELLANT:

Linsey W. West
Kara M. Stewart
Lexington, Kentucky

BRIEF FOR APPELLEE:

P. Douglas Barr
Adam C. Reeves
Lexington, Kentucky