RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0398-ME

UNIVERSITY OF KENTUCKY AND
PENNY COX, IN HER OFFICIAL
CAPACITY AS TREASURER OF THE
UNIVERSITY OF KENTUCKY                                         APPELLANTS


|   |   |
|---|---|
| v. | APPEAL FROM FRANKLIN CIRCUIT COURT<br>HONORABLE THOMAS D. WINGATE, JUDGE<br>ACTION NO. 18-CI-00627 |


AMELIA LONG; MARK METCALF,
IN HIS OFFICIAL CAPACITY AS
KENTUCKY STATE TREASURER;
COMMONWEALTH OF KENTUCKY,
DEPARTMENT OF REVENUE;
KAREN DEVIN; RICHARD HARDY
II; SHERRIE TURNER; AND
TABITHA MARCUM                                                  APPELLEES

AND

NO. 2023-CA-0411-ME

COMMONWEALTH OF KENTUCKY,
DEPARTMENT OF REVENUE                                           APPELLANT


|   |   |
|---|---|
| v. | APPEAL FROM FRANKLIN CIRCUIT COURT<br>HONORABLE THOMAS D. WINGATE, JUDGE<br>ACTION NO. 18-CI-00627 |

AMELIA LONG, INDIVIDUALLY
AND ON BEHALF OF A CLASS OF
OTHERS SIMILARLY SITUATED;
KAREN DEVIN, INDIVIDUALLY
AND ON BEHALF OF A CLASS OF
OTHERS SIMILARLY SITUATED;
PENNY COX IN HER OFFICIAL
CAPACITY AS TREASURER,
UNIVERSITY OF KENTUCKY;
RICHARD HARDY, II,
INDIVIDUALLY AND ON BEHALF
OF A CLASS OF OTHERS
SIMILARLY SITUATED; SHERRIE
TURNER, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF OTHERS
SIMILARLY SITUATED; TABITHA
MARCUM, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF OTHERS
SIMILARLY SITUATED; AND
UNIVERSITY OF KENTUCKY                                        APPELLEES


OPINION
AFFIRMING IN PART, REVERSING
IN PART, AND REMANDING

** ** ** ** **

BEFORE:  ACREE, GOODWINE, AND JONES, JUDGES.

ACREE, JUDGE:  Appellants, the University of Kentucky (UK), Penny Cox, in

her official capacity as Treasurer of UK, and the Commonwealth of Kentucky,

Department of Revenue (Department), challenge the Franklin Circuit Court's

rulings on the issues of class certification and sovereign immunity.  In an August

-2-

15, 2022 order granting partial judgment on the pleadings, the circuit court determined sovereign immunity did not apply to any of Appellees' claims. In a March 28, 2023 order, the circuit court granted Appellees' motion for class certification. We affirm in part, reverse in part, and remand.

## BACKGROUND

Appellees Amelia Long, Karen Devin, Richard Hardy II, and Sherrie Turner are former patients of UK HealthCare; Appellee Tabitha Marcum is the parent of a minor child who was a patient at UK. Each Appellee was billed for the medical care they or their child received. Insurance or another payor did not cover at least a portion of each Appellee's amount owed. UK sent each Appellee statements for the unpaid balances.

At all times relevant to this appeal,[1] UK took additional steps to pursue payment in the event a patient's balance remained unpaid. UK sent unpaid accounts to CKMS, an affiliated debt collection corporation, which would send additional notices to the patient. Should these efforts prove unsuccessful, CKMS would mail a final notice letter, a "Letter 8," to the patient. The Letter 8 would inform the patient as to his or her right to contest the amount owed and how to

---

[1] As UK notes in its brief, UK stopped referring unpaid healthcare balances to the Commonwealth of Kentucky, Department of Revenue in 2020. In 2022, the General Assembly amended Kentucky Revised Statute (KRS) 131.130 to prohibit Department collection of debt for healthcare goods and services. *See* KRS 131.130(12).

initiate such contest. The contest procedure would include a hearing before a hearing officer.

The Letter 8 also informed the patient that, should he or she fail to contest the amount owed, the balance would be referred to the Department for collection.[2] KRS 45.238 empowers executive branch agencies[3] to "certify" debts, and, having done so, must refer their certified debts to the Department for collection. *See* KRS 45.238.

None of Appellees requested a hearing, and, therefore, each of their outstanding balances were referred to the Department for collection. The Department proceeded to collect the balances via wage garnishment, levies against bank accounts, and state income tax offsets. The Department imposed statutory interest and collection fees. All Appellees, except Marcum, entered voluntary payment plans with the Department. Pursuant to these agreements, the Department

---

[2] UK explains in its brief that referral to the Department is not the exclusive avenue should balances remain unpaid or unchallenged after CKMS sends out a Letter 8. Accounts ineligible for referral to the Department (which were those accounts held by a nonresident of Kentucky or whose information did not include a social security number, date of birth, or mailing address) were instead referred for collection to private companies. Only debts referred to the Department are at issue in this appeal.

[3] KRS 45.237(1)(a) defines an "agency" as "an organizational unit or administrative body in the executive branch of state government as defined in KRS 12.010[.]" In *University of Kentucky v. Moore*, the Kentucky Supreme Court concluded UK is "in the executive branch of government" but remanded to the circuit court to determine whether UK is entitled to refer debts to the Department as an executive branch *agency* pursuant to KRS 45.238. 599 S.W.3d 798, 810 (Ky. 2019). This same issue is before the circuit court in the instant case, but is not before this Court in this interlocutory appeal.

would agree to cease collection in exchange for regular payments toward the patient's outstanding balance.

Appellees filed the underlying lawsuit on June 19, 2018, on behalf of themselves and "a class of others similarly situated" against UK, UK Treasurer Susan Krauss in her official capacity, the Department, and Allison Ball in her official capacity as Kentucky State Treasurer. Record (R.) at 1. Central to their lawsuit, Appellees (1) argue UK is not an "agency" as defined by KRS 45.237 for the purpose of debt certification and referral under KRS 45.238 and, therefore, unlawfully referred Appellees' medical debts to the Department; and (2) challenge these statutes and the Department's debt collection procedures as violative of their due process rights under both the United States and Kentucky Constitutions. Appellees also contest the Department's application of collection fees.

Appellees seek a variety of relief. In their second amended complaint, they request declarations that (1) UK may not legally refer debts to the Department for collection and that the Department may not engage in collection efforts; (2) that KRS 45.237 to 45.241 are unconstitutional, both facially and as applied; (3) that the Department was not entitled to impose its collection fees; (4) that Appellees and class members are entitled to an order and judgment directing the return of all unlawfully collected funds; and (5) that Appellees are entitled to "the equitable remedy of restitution of their moneys from the Defendants." R. at 657-58. They

also seek an order directing the Kentucky State Treasurer and the UK Treasurer to return Appellees' and other class members' funds, as well as prejudgment interest, and costs and attorneys' fees. R. at 658.

On August 15, 2022, the circuit court entered an order granting partial judgment on the pleadings to Appellees. Therein, the circuit court ruled on three threshold issues in the case, including rulings on the merits of Appellees' suit regarding the meaning and application of KRS 45.237, 45.238, and 45.241. Relevant to this appeal, the circuit court determined UK and the Department were not entitled to sovereign immunity for any of Appellees' claims.

On March 28, 2023, the circuit court entered an order granting Appellees' motion for class certification. In their motion, Appellees requested certification of the following class:

> All persons who, within ten (10) years preceding the filing of the Complaint herein, were subjected to actions taken or threatened by Defendants to collect UK HealthCare accounts pursuant to KRS 45.237 to KRS 45.238 and KRS 45.241, or any other statutory authority, and who had money seized or collected from them by the Department of Revenue as a result or consequence of such actions, including through payment plans which the class members entered into under threat of Department of Revenue collection activities.

R. at 1500.[4]

---

[4] We note the circuit court defined the class slightly differently than Appellees requested in their motion. The circuit court certified and defined the class as follows:

UK and the Department now appeal.

## ANALYSIS

"[T]he general rule in appellate procedure is that only a trial court's final orders are appealable." *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436 (Ky. 2018) (citing *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009)). However, "select issues" may be appealed in the absence of a final order. *Id.* (citing *Prater*, 292 S.W.3d at 886; *Baker v. Fields*, 543 S.W.3d 575 (Ky. 2018)). Class certification is one such issue. CR 23.06 ("An order granting or denying class action certification is appealable within 10 days after the order is entered."). Sovereign immunity is another, because immunity "entitles its possessor to be free 'from the burdens of defending the action, not merely . . . from liability.'" *Prater*, 292 S.W.3d at 886 (citing *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006); *Lexington-Fayette Urb. Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 135 (Ky. 2004)) (modification original).

---

All persons who, since January 1, 2009, were subjected to actions taken or threatened by Defendants to collect on health care accounts with the University of Kentucky, including Kentucky Medical Services Foundation accounts, pursuant to KRS 45.237, 45.238, 45.241, or any other statutory authority, and who did have money collected from them by the Department of Revenue as a result or consequence of such actions.

R. at 1840.

Appellees argue the sovereign immunity issue is not properly before this Court for our review. We disagree. The circuit court plainly ruled on sovereign immunity as a threshold issue in this dispute in its August 15, 2022 order. The Department indicated it would raise the immunity issue in its notice of appeal. And, analysis of both the interlocutory issues of class certification and sovereign immunity will promote efficient and economic resolution of this matter.

Because the circuit court has not entered a final judgment, our review in this interlocutory appeal is limited to the issues of class certification and sovereign immunity. This requires us to proceed with caution. "We must focus our analysis on th[ese] limited issue[s] and in so doing scrupulously respect the limitations of the crossover between" an analysis on the merits of Appellees' case and the issues raised on this interlocutory appeal. *Hensley*, 549 S.W.3d at 436. While we note the circuit court has made partial rulings on the merits of Appellees' case, those issues are beyond the scope of our review. We will discuss the issues of class certification and sovereign immunity in turn.

## I.   Class Certification

### Standard of Review

Appellate courts review class action certifications for abuse of discretion. *Sowers v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983). A circuit court has abused its discretion when its "decision is arbitrary, unreasonable, unfair, or

unsupported by [sound] legal principles." *Lawson v. Lawson*, 290 S.W.3d 691, 694 (Ky. App. 2009) (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). "Under this standard, we review the record and the ruling while giving deference to the trial court's factual findings and rulings because the trial court is in the best position to evaluate the evidence before it." *Nebraska All. Realty Co. v. Brewer*, 529 S.W.3d 307, 311 (Ky. App. 2017) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky. 2004)). The abuse of discretion standard requires appellate courts to be "highly deferential" to a circuit court's decision. *Id.* at 315. "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Walters v. Moore*, 121 S.W.3d 210, 215 (Ky. App. 2003) (quoting *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995)).

**Class Certification Analysis**

"Taken together, [CR 23.01 and 23.02] provide a comprehensive roadmap to class certification." *Swearington v. Hagyard Davidson McGee Assocs., PLLC*, 641 S.W.3d 186, 195 (Ky. App. 2022). These rules synthesize to form a two-step analysis. First, each of CR 23.01's prerequisites must be met and, second, one of CR 23.02's three conditions must apply. *Manning v. Liberty Tire Servs. of Ohio, LLC*, 577 S.W.3d 102, 111 (Ky. App. 2019). If one of CR 23.01's requirements is not satisfied, or if none of CR 23.02's requirements are satisfied,

then class certification should be denied. *Id.* "The party seeking certification bears the burden of proof." *Summit Med. Grp. Inc. v. Coleman*, 599 S.W.3d 445, 449 (Ky. App. 2019) (citations omitted).

## A. CR 23.01

As CR 23.01 provides:

> Subject to the provisions of Rule 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

CR 23.01. "The four requirements in CR 23.01 to maintaining a class action can be summed up as *numerosity, commonality, typicality,* and *adequacy of representation* requirements." *Hensley*, 549 S.W.3d at 443-44 (citing *Brewer*, 529 S.W.3d at 311) (emphasis original). Because Appellants do not challenge the numerosity of Appellees' proposed class, we will limit our discussion to the remaining three.

## 1. Commonality

Commonality exists where "questions of law or fact are common among the class members." *Brewer*, 529 S.W.3d at 312; CR 23.01. Commonality is not the same as identity; "[i]t is unnecessary to have a 'complete identity of facts

relating to all members as long as there is a common nucleus of operative facts.'" *Manning*, 577 S.W.3d at 113 (quoting *Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001)). Indeed, commonality "does not require that all questions of law or fact be common." *Wiley*, 48 S.W.3d at 23. Instead, the relevant inquiry is "[w]hether the class plaintiffs' claims 'depend upon a common contention . . . that is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Hensley*, 549 S.W.3d at 443 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)) (modification original).

The circuit court identified several considerations common to the class. At core, the circuit court noted Appellants used KRS 45.237 to 45.238 to institute collection actions. It noted the Department used this authority to collect from Appellees' bank accounts, wages, and tax refunds, unless the Appellee began making payments himself or herself. And, the circuit court listed several questions common to each Appellee and class member, including whether UK had statutory authority to refer these debts to the Department for collection and whether the Department had the statutory authority to collect those debts; these questions will be met with the same defenses from Appellants.

In our view, the commonality requirement has been met in the instant case. We agree with Appellees that UK and the Department engaged in common actions to collect unpaid balances: after repeated notices, the final "Letter 8" is sent, and eligible accounts are referred to the Department for collection should the Letter 8 prove ineffective. Unpaid balances were either obtained forcefully or by agreement upon the debtor's entry into a payment plan. Any ruling by the circuit court as to the authority of Appellants to collect unpaid debts in this manner would indeed result in class wide resolution of that issue for each class member. The circuit court did not abuse its discretion in determining the commonality requirement had been met.

## 2. Typicality

"Unlike commonality, which focuses on the group characteristics such as the relationship of common facts and legal issues related to the class as a whole, typicality examines the individual characteristics of the named plaintiffs in relation to the class." *Manning*, 577 S.W.3d at 114. Claims or defenses are typical "if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and if the claims of the representative are based on the same legal theory." *Hensley*, 549 S.W.3d at 443 (citation omitted). In other words, the legal claims of the class representatives and the individual class members must share a "sufficient nexus[.]" *Brewer*, 529 S.W.3d at 312 (quoting

*Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)).  "As with commonality, the claims need not be identical, and 'cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'"  *Id.* at 313 (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)).

Appellees claims indeed arise from the same event, practice, or course of conduct that give rise to other class members' claims:  UK and the Department's practice of referring unpaid medical debt for collection purposes, which Appellees assert is done without statutory authority to do so.  As discussed in our analysis of the commonality requirement, the manner in which UK and the Department interfaced with Appellees was fundamentally the same:  repeated notices, a final notice, referral to the Department, and then either institution of collection action or a payment plan.  The method of communication with each class member prior to UK's referral to the department, and the Department's course of conduct following referral, was fundamentally the same across Appellees and class members.

Further, Appellees' claims each rest on the same legal theories.  Chiefly, Appellees argue that UK lacks authority to refer its debts to the Department because it is not a KRS 45.237 agency, and that KRS 45.237 and 45.238 are violative of both the United States and Kentucky Constitutions.  While

trivial differences exist between each Appellee's particular circumstances – for instance, each Appellee except Marcum entered a payment plan with the Department – none of these differences frustrate typicality. Appellees' claims are typical of those of the class, and the circuit court 's conclusion in this regard was not an abuse of discretion.

## 3.    Adequacy of Representation

Finally, class representatives must "fairly and adequately protect the interests of the class." *Manning*, 577 S.W.3d at 115; CR 23.01. The adequacy requirement contains two considerations: "1) the representative must have common interests with unnamed members of the class[;] and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Brewer*, 529 S.W.3d at 313 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Naturally, this requirement overlaps with the commonality and typicality requirements; how could class members ensure named plaintiffs will adequately represent their interests if they do not share common questions of law or fact, or if the claims of the named plaintiffs' claims are not typical of those of the class? However, adequacy additionally requires us to determine whether named plaintiffs have any significant conflicts of interests with other class members. *Id*. (citing *Hensley*, 549 S.W.3d at 443). While this prong ordinarily requires our examination of both named class representatives and

-14-

class counsel, *id.*, Appellants do not challenge the adequacy of their opponents' counsel. Therefore, our inquiry will focus upon Appellees themselves.

As already stated, Appellees and other class members were subject to Appellants' collection procedures, and it is these procedures which Appellees challenge. This challenge will require resolution of questions of law common to all class members, named and unnamed. Accordingly, Appellees have common interests with the unnamed class members sufficient to certify the class action. Further, Appellees have no conflicts of interest with other class members which would prevent Appellees from adequately representing the class. The circuit court's ruling on adequacy does not reflect an abuse of discretion.

## B. CR 23.02

Again, one of CR 23.02's three requirements must be met for class certification to be appropriate. Appellees moved for, and were granted, class certification under CR 23.02(c). Accordingly, our review will be limited to whether class certification under CR 23.02(c) was appropriate.

CR 23.02(c) contains two requirements for class certification: predominance and superiority. *See* CR 23.02(c); *Manning*, 577 S.W.3d at 116 ("A CR 23.02(c) class must satisfy a two-part test of predominance and superiority."). As for the predominance prong, the rule requires that "the questions of law or fact common to the members of the class predominate over any questions affecting

-15-

only individual members[.]"  CR 23.02(c).  "[I]n contrast to CR 23.01's commonality requirement, CR 23.02(c)'s predominance criterion is far more demanding."  *Manning*, 577 S.W.3d at 118 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997)).

The predominance requirement is satisfied "if resolution of some of the legal or factual questions for class-wide resolution can be achieved using generalized proof, and if these particular issues are more substantial than those requiring individualized proof."  *Id*. at 116 (citing *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 268 (E.D. Ky. 2009)).  Conversely, it has not been satisfied if the claims of individual class members would give rise to idiosyncratic issues which "would detract from the benefit of a conglomerate approach."  *Id*.  While this requirement may be met even if unique issues apply to individual plaintiffs, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (quoting 2 W. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:49, pp. 195-96 (5th ed. 2012)).

In *Manning v. Liberty Tire Services of Ohio, LLC*, a tire fire at a facility operated by Liberty Tire Services deposited soot, ash, and other

particulates onto surrounding neighborhoods. *Manning*, 577 S.W.3d at 108. An estimated 2,500 individuals were exposed. *Id*. at 109. The appellants, residents of the area, sought class certification. *Id*. They sought certification of two sub-classes; the first related to a shelter-in-place order, and the second related to particulate smoke exposure. *Id*. The circuit court determined the CR 23.02(c) requirements were not met, and a panel of this court agreed. *Id*. at 108-09. The individualized questions which would have to be resolved for each plaintiff included:

> whether soot and ash actually landed on the property of the individual class member living within the geographical boundaries of the plume; whether the source of the soot and ash was the Appellees' fire; whether soot and ash caused damage; whether the [shelter-in-place] order impacted the individual putative class member's ability to enjoy his or her property, and even whether the individual plaintiffs obeyed the [shelter-in-place] order.

*Id*. at 117. Though common questions existed, several individualized questions related to causation, impact, and damages would require separate, often differing answers as to each appellant. *Id*. For that reason, we determined the circuit court did not abuse its discretion in determining common issues did not predominate individual issues. *Id*. at 118.

The issues relating to the individual class members in *Manning* contrast with those presented in the present appeal. Here, Appellees challenge an identical pattern of conduct in which Appellants engaged for each class member.

Unlike the appellants in *Manning*, where several individualized questions of fact regarding pollutant exposure would have frustrated resolution of a class action, the instant case presents a much higher degree of uniformity. The communications and notices UK sent each class member were pursuant to a standardized procedure. The Department's methods of seeking repayment of referred debts took one of two forms: collection or a payment plan. And, the legal challenges pertinent to each class member are the same, as detailed previously. While some variation exists between the circumstances relevant to each Appellee and class member, the common questions of law and fact predominate. The circuit court did not abuse its discretion in this conclusion.

Second, CR 23.02(c) requires class action to be "superior to other available methods for the fair and efficient adjudication of the controversy." CR 23.02(c). The rule provides four "matters pertinent to" the superiority inquiry:

> (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

CR 23.02(c). In short, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co. America*

*Sales Practice Litigation Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (internal quotation marks and citations omitted).

As the circuit court found, the typical class member incurred relatively minor damages, which, when weighed against the expense required for an individual class member to litigate his or her claims separately, would promote interest in the resolution of this matter via class action. It found a class action would promote efficiency because controlling issues common to each class member would be resolved at once rather than through separate actions which could number into the hundreds or thousands. We cannot say these considerations constitute an abuse of discretion by the circuit court in determining whether a class action would be the superior vehicle to adjudicate this controversy.

In sum, we detect no reversible error in the circuit court's decision to certify this class. As the circuit court found, questions of law or fact are common across class members, Appellees' claims are typical of the class, and Appellees would adequately represent class interests. Further, it found common issues predominate over individual issues, and a class action would be the superior method of resolution of this dispute. None of these conclusions demonstrate an abuse of discretion, and we therefore affirm the circuit court's order granting class certification.

## II. <u>Sovereign Immunity</u>[5]

### <u>Standard of Review</u>

Whether sovereign immunity applies is a question of law. *Ohio v. Great Lakes Minerals, LLC*, 597 S.W.3d 169, 171 (Ky. 2019) (citing *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006)). Questions of law are reviewed *de novo*. *Id.* (citing *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007)).

### <u>Sovereign Immunity Analysis</u>

Before we begin our review, we note the similarity between this appeal and its companion consolidated appeal, *University of Kentucky, et al. v. Kimberly Bennett, et al.*, No. 2022-CA-1276-MR, *Commonwealth of Kentucky, et al. v. Kimberly Bennett, et al.*, No. 2022-CA-1321-MR, and *Commonwealth of Kentucky, Dep't of Revenue v. Kimberly Bennett, et al.*, No. 2022-CA-1321-MR. Therein, the same circuit court determined sovereign immunity was waived for suits challenging referral of educational debts held by public educational

---

[5] "Sovereign immunity" and "governmental immunity" are different concepts. Governmental immunity is derived from sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001) (citing 57 AM.JUR.2D *Municipal, County, School and State Tort Liability* § 10 (2001)). "However, to the extent that the agency is performing a governmental function, as a state university does, its governmental immunity is functionally the same as sovereign immunity." *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 305 n.1 (Ky. 2014) (citing *Yanero*, 65 S.W.3d at 519). Because these immunities are "functionally the same" in the context of this appeal, *id.*, and the terms are often used interchangeably, *see Yanero*, 65 S.W.3d at 519, we will refer to the form of immunity at issue in this appeal as "sovereign immunity."

institutions to the Department via the same KRS 45.237 *et seq*. procedure.

However, the circuit court identified a different sovereign immunity waiver in

*Bennett* than it did in the present appeal. Therefore, our analysis herein will cover

much of the same ground as in *Bennett*, but will not be identical.

"Sovereign immunity is a bedrock component of the American

governmental ideal, and is a holdover from the earliest days of the Commonwealth,

having been brought over from the English common law." *Caneyville Volunteer*

*Fire Dept. v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 799 (Ky. 2009).

Legal actions may only be maintained against the Commonwealth where immunity

has been waived. *Yanero*, 65 S.W.3d at 518 (citing RESTATEMENT (SECOND) OF

THE LAW OF TORTS § 895B(1) (A.L.I. 1979); 72 AM.JUR.2D *States, Territories, and*

*Dependencies* § 99 (1974)).

Immunity is not simply a defense. Where it applies, it "affords the

state absolute immunity from suit[.]" *Transit Auth. of River City v. Bibelhauser*,

432 S.W.3d 171, 173 (Ky. App. 2013). This means, rather than simply absolving

the state from liability, the immune party is free "from the burden of defending

oneself altogether." *Smolcic*, 142 S.W.3d at 135 (quoting *Fralin & Waldron, Inc.*

*v. Henrico Cnty., Va.*, 474 F. Supp. 1315, 1320 (D.C. Va. 1979)). By extension,

those afforded sovereign immunity do not have to incur the expenses arising from

trial and discovery. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S.

Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Indeed, "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985) (citations omitted).

UK and its officers who were sued in their official capacities are subject to the protections of sovereign immunity, so long as immunity has not been waived. "The state universities of this Commonwealth, including the University of Kentucky, are state agencies that enjoy the benefits and protection of governmental immunity except where it has been explicitly waived by the legislature." *Furtula*, 438 S.W.3d at 305; *see also Withers v. Univ. of Kentucky*, 939 S.W.2d 340, 344 (Ky. 1997) ("[The] University of Kentucky is entitled to sovereign immunity."). And because the Commonwealth is the real party against which relief is sought, immunity "extends to public officials sued in their representative (official) capacities[.]" *Yanero*, 65 S.W.3d at 518 (citations omitted).

"[T]he granting of waiver is a matter exclusively legislative." *Withers*, 939 S.W.2d at 344. "It is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero*, 65 S.W.3d at 517 (citing RESTATEMENT (SECOND) OF THE LAW OF TORTS § 895B(1) (A.L.I. 1979); 72 AM.JUR.2D *States, Territories, and Dependencies* § 99 (1974)). Waiver of

-22-

immunity must be "specific and explicit[.]" *Commonwealth v. Whitworth*, 74 S.W.3d 695 (Ky. 2002) (citing *Withers*, 939 S.W.2d 340). Purported statutory waivers are strictly construed in favor of the government, and waiver will only be identified where "the intention of the legislature to effect this object is clearly expressed." *Lexington-Fayette Urb. Cnty. Gov't Bd. of Health v. Bd. of Trustees of Univ. of Kentucky*, 879 S.W.2d 485, 486 (Ky. 1994) (citations omitted). Waivers of immunity are construed narrowly. *Commonwealth, Just. & Pub. Safety Cabinet, Dep't of Kentucky State Police v. Gaither*, 539 S.W.3d 667, 676 (Ky. 2018). "We will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Withers*, 939 S.W.2d at 346 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S. Ct. 458, 464-65, 53 L. Ed. 742 (1909)) (modification original).

In *University of Kentucky v. Moore*, the Kentucky Supreme Court recognized exceptions to sovereign immunity for declaratory and injunctive relief. 599 S.W.3d 798, 811 (Ky. 2019) (citing *Beshear v. Haydon Bridge Co., Inc.*, 416 S.W.3d 280, 293-94 (Ky. 2013)). As noted above, Appellees seek a variety of declaratory and injunctive relief. However, as explained below, application of sovereign immunity requires a closer look at the *nature* of the specific relief sought.

The circuit court determined sovereign immunity does not apply because Appellees do not actually seek monetary damages, but instead seek the return of money to which UK and the Department were never entitled. The circuit court determined the funds at issue "never vested with the state treasury[,]" R. at 1366, and, therefore, Appellees actually seek a return of their own private funds rather than withdrawal of public funds. And, the circuit court finds further support for its blanket waiver in KRS 45.111, which provides that "[a]ny funds received into the State Treasury which are later determined not to be due to the state may be refunded to the person who paid such funds into the Treasury." KRS 45.111.

The cases that the circuit court cites for its distinction between lawsuits seeking return of private funds as opposed to payment out of public funds – *Ross v. Gross*, 188 S.W.2d 475 (Ky. 1945), *Barnes v. Levy Bros.*, 175 S.W.2d 495 (Ky. 1943), *Barnes v. Stearns Coal & Lumber Company*, 175 S.W.2d 498 (Ky. 1943), and *Great Atlantic & Pacific Tea Company v. Lexington*, 76 S.W.2d 894 (Ky. 1934) – make no mention of sovereign immunity or any waiver thereof. Instead, the circuit court provides these cases as an analogy to the relief sought in the present case. For instance, in *Great Atlantic & Pacific Tea Co.*, Great Atlantic sued the city of Lexington for its payment of $2,106.20 in cigarette license taxes which no ordinance required. 76 S.W.2d at 894. Lexington argued "that there is no implied promise of a municipality to refund money paid to it and that there is no

authority of a statute – the source of all its powers – for such refund." *Id.* at 895. Ultimately, the Court of Appeals, then the highest court in Kentucky, concluded that "[m]oney paid without consideration and which in law, honor, or good conscience was not payable ought in law, honor, and good conscience to be recoverable, and that rule applicable to transactions between individuals should be generally made applicable to municipalities and other governments." *Id.* We find these cases less helpful to resolve the sovereign immunity issue than did the circuit court.

Instead, more recent jurisprudence directly discusses the sovereign immunity issue and provides more helpful guidance. Ultimately, upon exploration of this jurisprudence and its application to the various relief Appellees seek, we conclude, in sum, that sovereign immunity bars monetary relief but does not bar declaratory relief. However, where a plaintiff seeks a declaration that they are entitled to monetary relief –as Appellees seek here – such monetary relief is disguised as declaratory relief and is similarly barred. And, because Appellees have not yet obtained any final judgment declaring that Appellants' debt referral and collection scheme is contrary to law for any of the reasons that Appellees argue, the question of whether sovereign immunity bars monetary relief sought pursuant to such declaratory judgment is unripe.

**A.** **Sovereign Immunity Bars Appellees' Requested Monetary Relief and Declarations that Appellees are Entitled to Monetary Relief.**

The circuit court believes *Beshear v. Haydon Bridge Co. Inc.*, 416 S.W.3d 280 (*Haydon Bridge II*)[6] to be so factually disanalogous to the present case that it provides no guidance. We disagree. *Haydon Bridge II* is quite instructive and makes plain that the nature of the relief which a plaintiff seeks must be closely examined to determine whether sovereign immunity applies. Further still, *Haydon Bridge II* is helpful for its discussion of KRS 45.111 – the statute upon which the circuit court partially relies in concluding sovereign immunity does not apply.

In *Haydon Bridge II*, the plaintiffs contested the suspension of appropriations from the General Fund to the Kentucky Workers' Compensation Funding Commission's Benefit Reserve Fund (BRF) and transferring money from the BRF to other state funds. 416 S.W.3d at 283-84. The Governor argued sovereign immunity barred: (1) injunctive relief prohibiting movement of funds out of the BRF into the General Fund or to other state agencies; and (2) "retroactive injunctive relief" returning "any and all monies that had been

---

[6] *Haydon Bridge II* is the second appeal arising from a lawsuit filed by Haydon Bridge Company, Inc., Greater Louisville Auto Dealers Association, Kentucky Automobile Dealers Association, M & M Cartage Co., Inc., Springfield Laundry & Dry Cleaners, Inc., and Usher Transport, Inc. against the Governor and the State Budget Director. *Haydon Bridge II*, 416 S.W.3d at 284. The plaintiffs requested a declaration that provisions in budget bills suspending an annual appropriation from the General Fund to the BRF and transferring money out of the BRF were unconstitutional. The Kentucky Supreme Court determined the suspension of appropriations to the BRF was constitutional, but that the bills' transfers of money out of the BRF were not. *Id*. The second appeal resulted from the plaintiffs' amended complaint upon remand. *Id*. at 285-86.

transferred from the BRF to the General Fund in the decade from 2000-2010." *Id.* at 284.

The plaintiffs in *Haydon Bridge II* argued KRS 45.111 waived sovereign immunity against their claims because it provides for repayment of funds not due to the state. *Id.* at 289. However, the workers' compensation insurance premiums at issue were "literally 'due to the state'" because they were lawfully subject to assessment. *Id.* And, because the plaintiffs did not seek a refund of their premiums directly but, rather, requested the amounts moved from the BRF be restored, the Kentucky Supreme Court determined KRS 45.111 did not apply to the funds at issue. *Id.* at 289-91. Though the Supreme Court did determine that KRS 45.111 supplied "a limited waiver of sovereign immunity," *id.* at 291, it was not required to explain the parameters of this waiver due to the inapplicability of KRS 45.111. This marks an important distinction between *Haydon Bridge II* and the instant appeal, as Appellees assert the amounts collected for healthcare services were not due to the state.

Appellees seek two kinds of relief to which *Haydon Bridge II*'s distinction between prospective declaratory relief and retroactive injunctive relief applies. They seek prospective declaratory relief in the form of a declaration that Appellants' referral and collection program is illegal, whether statutorily, constitutionally, or both. They also seek the sort of "retroactive injunctive relief"

that *Haydon Bridge II* contemplates in the form of an order directing the return of their money. The Supreme Court determined the retroactive injunctive relief at issue in *Haydon Bridge II* – an order directing money transferred out of the BRF be returned to it – is barred by sovereign immunity "regardless of whether it is labeled a retroactive injunction, equitable restitution, or some other type of remedy." *Id*. at 294-95. This is because such relief "would require the Commonwealth to withdraw monies from the General Fund, an action the Commonwealth has not consented to through waiver of its sovereign immunity." *Id*. at 294.

In its discussion of sovereign immunity, the circuit court in the present appeal concluded that KRS 45.111 "confirms that the funds paid into the Treasury that are not due to the state should be refunded[.]" R. at 1367. While *Haydon Bridge II* mentions that KRS 45.111 provides a limited waiver of sovereign immunity, 416 S.W.3d at 291, the Supreme Court was not required to explain the parameters of this waiver. However, we cannot read *Haydon Bridge II* to arrive at two opposite conclusions: that sovereign immunity does not apply to claims for monetary relief – including claims for equitable restitution or for an injunction ordering the return of money – while also concluding sovereign immunity applies to relief which would require withdrawal from the state treasury. *See Haydon Bridge II*, 416 S.W.3d at 292-94.

-28-

Central to the circuit court's conclusions that sovereign immunity does not apply here is its determination that Appellees' collected money had not vested with the Commonwealth. This is indeed an important factual distinction between this case and *Haydon Bridge II*. In *Ross* – a case upon which the circuit court relies and the Supreme Court discusses in *Haydon Bridge II* – money was paid into the state treasury pursuant to a statute requiring such payment should the population of a county total 75,000 or greater. *Ross*, 188 S.W.2d at 476. Because Harlan County had a population of less than 75,000, plaintiffs sought the return of money mistakenly paid pursuant to that statute. *Id*. Ultimately, the *Ross* court concluded that "since the money belonged to the appellees or the County, its payment into the State Treasury did not vest the State with title thereto or a right to its custody" and, therefore, that Section 230 of the Kentucky Constitution's prohibition against drawing money from the State Treasury absent an appropriation made by law did not apply. *Id*. at 477.

*Ross* makes no mention of sovereign immunity, however. In effect, therefore, the circuit court concluded that, because the source of Appellees' relief would be repayment of their own money rather than withdrawal from the state treasury, sovereign immunity does not apply. We disagree, as sovereign immunity is not waived simply because relief would not be drawn from the state treasury. Again, sovereign immunity "is an inherent attribute of a sovereign state that

-29-

precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero*, 65 S.W.3d at 517.

Because sovereign immunity is an inherent attribute of the state, Sections 230 and 231 of the Kentucky Constitution do not imply that sovereign immunity does not apply to suits against the Commonwealth seeking to recover funds from sources other than the treasury.

> [C]ontrary to assertions sometimes found in our case law, Sections 230 and 231 of our Constitution are not the source of sovereign immunity in Kentucky, but are provisions that permit the General Assembly to waive the Commonwealth's inherent immunity either by direct appropriation of money from the state treasury (Section 230) and/or by specifying where and in what manner the Commonwealth may be sued (Section 231).

*Yanero*, 65 S.W.3d at 524. The characterization of the money collected from Appellees as having vested with the Commonwealth or not is not relevant to the sovereign immunity issue. Because there has been no direct appropriation directing the return of Appellees' money, and, as discussed above, the general assembly has not waived sovereign immunity against suits seeking repayment of money wrongfully paid – by enacting KRS 45.111 or otherwise –sovereign immunity bars Appellees' requested relief in the form of an order directing the return of the money at issue.

As for Appellees' requested declarations that they are entitled to an order and judgment which returns the collected funds, as well as to the "equitable

remedy of restitution," R. at 657-58, we conclude such relief is monetary relief disguised as declaratory relief. The rationale in *Haydon Bridge II* applies: we must look to the nature of the requested declarations to determine whether sovereign immunity prohibits it. The Kentucky Supreme Court determined requests for equitable restitution and retroactive injunctive relief were effectively requests for monetary damages, and therefore barred. By extension, Appellees' requested declarations that they are entitled to an order and judgment returning money they paid and that they are entitled to equitable restitution is also barred.

Therefore, Appellees' requested monetary relief – both their requests for injunctive relief and those requests for declaratory relief discussed above – is barred by sovereign immunity and the circuit court erred in applying a blanket waiver of sovereign immunity.

**B.** **Sovereign Immunity Does Not Bar Appellees' Remaining Requested Declaratory Relief**.

Appellees seek other declarations from the circuit court. They seek declarations that UK is not statutorily authorized to refer debt to the Department for collections, that the challenged KRS Chapter 45 referral and collection scheme is unconstitutional both facially and as applied, and that the Department was not entitled to impose collection fees. Rather than requests for monetary relief, these declarations, if granted, would declare Appellees' legal rights, and sovereign immunity does not bar such relief.

The distinction again lies in the nature of the requested relief. "[A] declaratory judgment action is not a claim for damages, but rather it is a request that the plaintiff's rights under the law be declared." *Commonwealth v. Kentucky Ret. Sys.*, 396 S.W.3d 833, 838 (Ky. 2013). "There is no harm to state resources from a declaratory judgment." *Id.* Despite the above discussion of sovereign immunity in relation to money damages, "[w]e do not have a government that is beyond scrutiny." *Id.* at 839. Rather, the government is "subject to appropriate scrutiny[,]" because "[i]f sovereign immunity can be used to prevent the state, through its agencies, from being required to act in accordance with the law, then lawlessness results." *Id.*

The Kentucky Declaratory Judgment Act, found in KRS Chapter 418, contemplates that a declaratory judgment may be obtained even if other kinds of relief are foreclosed:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

KRS 418.040. The Declaratory Judgment Act "is intended to be remedial in nature, and its purpose is to make courts more serviceable to the people by way of settling controversies and affording relief from uncertainty and insecurity with

-32-

respect to rights, duties and relations." *Mammoth Med., Inc. v. Bunnell*, 265 S.W.3d 205, 209 (Ky. 2008).

The same statutory referral and collection program challenged in the present appeal was at issue in the recent *University of Kentucky v. Moore*, 599 S.W.3d 798. In the exact manner as the present appeal, UK certified healthcare debt and referred it to the Department for collection using the KRS 45.237 *et seq*. mechanism. 599 S.W.3d at 800-01. Ultimately, and unlike the current case, Moore amended her complaint to only seek declaratory relief. *Id*. at 801-02. Moore therefore did not seek monetary relief, and instead requested the following declaration:

> UK and UK HealthCare may not legally refer Moore's debt to the Enterprise Collections Office for collection and consequently the Department of Revenue and/or the Enterprise Collections Office may not legally undertake efforts to collect debt owed to UK, including efforts such as garnishing Moore's bank accounts, wages and tax refunds.

*Id*. at 801 (footnotes omitted).

Relevant to the current appeal, the Supreme Court determined Moore's declaratory relief was not barred by sovereign immunity. *Id*. at 810. Consistent with *Retirement Systems*, the Supreme Court determined a declaratory judgment action may be sustained "when a person's rights are affected by a statute or other government regulation." *Id*. It noted that, following a declaratory

-33-

judgment, "further relief based upon that declaration may be granted whenever necessary or proper" whether in the same proceeding or by separate action. *Id*. (citing KRS 418.055). And, whether relief derived from a declaratory judgment will be or may be pursued, "declaratory relief is not predicated on whether associated future consequential relief may be requested." *Id*. at 812.

Therefore, Appellees' requested declaratory relief – except for that relief identified previously as being, in truth, monetary relief – is not barred by sovereign immunity. Though the circuit court erred in exempting Appellees' claims from sovereign immunity on a wholesale basis, it did not err in exempting Appellees' requested declaratory relief.

**C. <u>Whether or Not Sovereign Immunity Bars Monetary Relief Flowing from a Declaratory Judgment is an Unripe Issue</u>**.

Both *Moore* and *Retirement Systems* are distinct from the present appeal in an important respect: here, Appellees seek relief other than declaratory relief, while the plaintiffs in *Moore* and *Retirement Systems* only sought declaratory relief. *Id*. at 801-02, *Ret. Sys.*, 396 S.W.3d at 836. However, sovereign immunity bars the monetary relief Appellees *immediately* request but does not bar their sought-after declaratory relief – except as previously discussed. Because Appellees request multiple forms of relief, we are required to apply sovereign immunity in relation to each form of relief, rather than using an all-or-nothing approach.

-34-

This leads us to the next issue, which the *Moore* Court discussed: whether sovereign immunity functions as a bar to monetary relief flowing from a declaratory judgment. *Moore*, 599 S.W.3d at 813. Despite noting "it is also true that in subsequent . . . actions to enforce declared rights, the immunity issue could be relevant if the revenue or property of the state would be affected[,]" the Supreme Court determined this issue to be unripe. *Id.* at 813 (modification original) (quoting *Ret. Sys.*, 396 S.W.3d at 838). It observed several necessary questions were not yet resolved, including UK's status as an agency for purposes of KRS 45.237 *et seq. Id.*

The circuit court in *Moore* had already entered a declaratory judgment in the underlying action, which the Supreme Court determined was an act within the circuit court's jurisdiction. *Id.* In the instant case, the circuit court has ruled on select issues on the merits, including holding that UK was not entitled to refer debts to the Department for collection. R. at 1360-69. However, Appellees' challenges to the constitutionality of KRS 45.237 *et seq.* are still pending. And, Appellees have yet to pursue monetary relief flowing from a declaratory judgment – which the circuit court has yet to enter. "The Court will not render advisory opinions or consider matters which may or may not occur in the future." *Id.* at 812 (quoting *Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007)). Because this issue is unripe, we decline to examine it.

## CONCLUSION

Based on the foregoing, we affirm the Franklin Circuit Court's March 28, 2023 order granting class certification. Additionally, we affirm in part and reverse in part the Franklin Circuit Court's August 15, 2022 order granting partial judgment on the pleadings regarding the sovereign immunity issue. We remand for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENTS
FOR APPELLANT
COMMONWEALTH OF
KENTUCKY DEPARTMENT OF
REVENUE:

R. Campbell Connell
Frank L. Dempsey
Austin T. Greene
Frankfort, Kentucky

BRIEF AND ORAL ARGUMENTS
FOR APPELLANT UNIVERSITY
OF KENTUCKY AND PENNY COX
IN HER OFFICIAL CAPACITY AS
TREASURER OF THE
UNIVERSITY OF KENTUCKY:

Bryan Beauman
Lexington, Kentucky

BRIEF AND ORAL ARGUMENTS
FOR APPELLEES AMELIA LONG,
KAREN DEVIN, RICHARD
HARDY, II, SHERRIE TURNER,
TABITHA MARCUM, AS
REPRESENTATIVES OF A CLASS:

E. Douglas Richards
Lexington, Kentucky

Brian C. Hicks
Frankfort, Kentucky